Sidney M. Harvey v. Commissioner.
Harvey v. Commissioner
Docket No. 1056.
United States Tax Court
1944 Tax Ct. Memo LEXIS 105; 3 T.C.M. (CCH) 1002; T.C.M. (RIA) 44309; September 27, 1944
*105 J. H. Amick, C.P.A., 809 Majestic Bldg., Detroit, Mich., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of a deficiency in income tax for the year 1940 in the amount of $12,722.44. Petitioner's contention is that a prior proceeding before the Board of Tax Appeals for the year 1939 is res judicata of the present issue of whether petitioner and his wife correctly reported the income of an electric welding company as partnership income It is urged that if the prior proceeding is not res judicata, the present record requires a similar holding. Certain commissions received pursuant to a sales contract with another company are seperately disputed, it being contended by respondent that they are in any event income to petitioner in toto. Findings of Fact Petitioner, an individual, filed his income tax return for 1940 in the collection district of Michigan. He has been engaged in business relating to the manufacture and sale of electric welding machines since 1922. In 1910 petitioner was working as an electrician for Parke, Davis & Co. He later *106 went to Mackinac Island where he operated the water, light, and power facilities. In 1917 he went to work for Chalmers Motor Car Co. and later the Chalmers Co. put him in charge of their electric welding machine work. While at Chalmers petitioner developed an electric welding machine, and in 1919 he went into the electric welding business for himself, using the machine which he had invented. He first did work for foundries and the tractor plant of the Ford Motor Co. His trade name was "Electric Welding Machine Company." The business was the manufacture of electric welding machines of all kinds. Around 1922 three girls were employed in the business to send out circular letters advertising the machines. Earlier proceeding involving this petitioner's income tax liability for 1939 before the United States Board of Tax Appeals bore Docket No. 109298. The error charged in the petition was that respondent included the amount of $19,178.40 in petitioner's taxable net income. The facts alleged, on which issue was joined, were that petitioner, by gift inter vivos, transferred a one-third interest in the assets and business of the Welding Machine Company to his wife on or about January *107 1, 1939, and they agreed that from that time the business should be conducted for their joint benefit and risk. The January 1, 1939, agreement was alleged to provide a division of profits as follows: the first $3,000 to petitioner's wife [as salary], and the remaining profits, one-third to the wife and two-thirds to petitioner. The losses were to be borne one-third by the wife and two-thirds by petitioner. It was further recited that both petitioner and his wife devoted their entire time to the conduct of the business. On the evidence adduced, the Board, in a Memorandum Findings of Fact and Opinion, found as facts that the husband and wife executed such an agreement; that the wife contributed services consisting of general office supervision, supervision of the purchase of materials, interviewing of customers, preparing invoices, keeping the books, entertaining customers, and generally doing what was required in furtherance of the business. It further found that after the execution of the contract no general public notice was given of any change in ownership and no accounts were set up on the books of the company evidencing it. And it was found that cash withdrawals from the company's *108 bank account were made during 1939 by petitioner in the aggregate sum of $15,967 and by his wife in the aggregate sum of $7,645, as to which they had a general practice of placing such cash in a safety deposit box to which each had access; but that of the cash withdrawn by the wife $5,970 was deposited in her separate bank account. It was further found that title to real estate on which a factory was subsequently erected was taken in the name of petitioner and his wife. Partnership and individual income tax returns referred to the business as "Electric Welding Machine Company." The issue was phrased in the opinion as being whether petitioner had sustained his burden of proving that there was "a partnership, within the meaning and intendment of the revenue act, composed of petitioner and his wife." In the course of the opinion, which recognized the issue as one of "fact." it was stated: "* * * The significant fact in the instant proceeding, tipping the scales at least slightly in petitioner's favor, is that his wife, unlike the wife in many of the cases to which reference has been made, was a real partner in the business for several years prior to 1939 in the sense that she was making, *109 and had made, a very substantial contribution to its success. This was recognized by petitioner, as is indicated in the agreement itself and shown more clearly in the evidence. The facts set out in the findings need not be repeated. * * * * * * * *
"* * * While it is true that the success of the business depended in no small degree upon the skill, training and salesmanship of petitioner, the wife's contribution to it was also quite substantial. Petitioner and his wife were no doubt aware of the fact that a saving in tax would result from a division of the business and its income but there is no evidence upon which a finding can be made that this was the impelling motive for the gift and the creation of the partnership. The evidence indicates, and we think it must be held, that petitioner made a bona fide gift to his wife and subsequently, or perhaps contemporaneously, he and she entered into a partnership within the meaning of the revenue act." On or about January 2, 1940, petitioner made his wife a "gift" of an additional one-sixth interest in the business and at that time they entered into a supplemental agreement modifying their agreement of January 3, 1939. The supplemental *110 agreement stipulated that the provisions of the 1939 agreement relating to salary to petitioner's wife and the division of profits and losses was revoked, and that henceforth the profits and losses were to be shared equally and no salary allowance was to be made to either party. During 1940 petitioner's wife devoted practically all her time to the firm's affairs. Her services were not less than the services rendered by her in the year 1939. They included the detailed office work, the checking of blue prints on special jobs, and the ordering of raw materials. In addition, she supervised the building of a new factory, costing approximately $33,000, from funds which came from the business. Title to the new factory was in the joint names of petitioner and his wife. A superintendent employed in the business supervised the manufacture of machines. When he was in need of instructions he consulted petitioner or acted in accordance with instructions given by petitioner to his wife. Petitioner had always made a practice of putting back into the business the money he had taken out in the event it was needed in the business. Such a policy has always been followed, both before and after 1939, *111 and petitioner's wife understood that it would be continued after the January 3, 1939, agreement. At the time of the gift by petitioner to his wife the physical assets of the business wee small, aside from the machines on hand, accounts receivable, and good will. Within a few months after the execution of the agreement of January 3, 1939, about 10 percent of the business's creditors and customers had been orally notified of the transaction. If anyone asked petitioner, he told them of the change in interest. There was no general notification. The business has at all times been registered on the books of the County Clerk as being conducted by petitioner. Petitioner's wife, Tula, went to work for him in 1927, the year in which they were married. She ran the office and since that time has had charge of all the office work. She also assisted in entertaining customers. Up to 1939 she received a salary which never exceeded $3,000. In the office she checked invoices and statements, did telephone ordering, checked blue prints, and performed the general office work, with the exception of the telephone. At the time of her marriage, the wife had little or no property, and up until 1939 she *112 had never contributed any capital to the business. Since their marriage it has been the policy of petitioner and his wife to hold property in their joint names. Several parcels of property have been and are so held. Since their marriage they have registered themselves as on a "fifty-fifty" basis. Petitioner and his wife have only a joint bank account. The money which was put into the joint account was withdrawn from the business account. Petitioner had no personal checking account and has always used the Welding Machine Company checks. All checks received by petitioner, whether personal or business, were cleared through his business account. Petitioner and his wife have always spent what they needed for running the household. His wife had access to the company bank account and could have used any part of it in any year. Petitioner's wife has never made any investment directly for herself. Some of the money withdrawn from the business has been invested jointly by petitioner and his wife in war bonds and other items, and some of it has been put back in the business. In making the transfer of an additional one-sixth interest petitioner thought that he could thus legitimately lessen *113 his tax liability. The one-sixth interest was not considered by petitioner to be a taxable gift. No inventory was taken or schedules made to disclose the assets at the time of the execution of the supplemental agreement. It was understood that the interests were to remain in the business. Early in 1940 a written agreement was entered into with Expert Die & Tool Company (hereinafter sometimes referred to as Expert) to sell on a commission basis, during 1940, 1941, and 1942, welding machines manufactured by it. The contract was signed "Sidney M. Harvey doing business under the assumed name of Electric Welding Machine Company." Petitioner's wife's name was not referred to in the contract. Petitioner thought that there was really no occasion for her name to be mentioned. The contract with Expert provided that it could not be transferred to a third person without Expert's written consent and that on the death of petitioner commissions on completed transactions were to be paid to his heirs or estate for a period of one year. Petitioner was the only contact man Expert had at the Ford Motor Co. Petitioner would make the sale and Expert would handle the orders direct. Through petitioner's *114 efforts the different departments of the Ford Motor Co. gradually used the Expert machine. The welding machine manufactured by Expert had a speed feature not possessed by petitioner's machine. During 1940 petitioner was selling the Expert machine and did not devote as much time to his own business of manufacturing and selling the type welding machines his company had previously produced. During 1940 Expert paid $30,850.70 to petitioner as commissions earned under the sales agreement. These payments were by check, payable to petitioner, and were endorsed by him and the Electric Welding Machine Company and deposited in an account entitled "Electric Welding Machine Company or Sidney M. Harvey." The expenses incurred with respect to the contract with Expert, consisting of plant superintendent services relating to engineering and follow-up work, and car expenses were paid out of the account of Electric Welding Machine Company Petitioner's wife had knowledge of the negotiations leading to the contract with Expert, and both petitioner and his wife regarded the contractual relation as being between the two firms and not petitioner's separate undertaking. They estimated that as much money *115 would be made selling Expert machines as would be made manufacturing and selling its own machines. The Expert machine competed with the machines manufactured by Electric Welding Machine Cobpany. In 1939 petitioner did not have a contract with Expert, and his business in 1940 differed from 1939 in that respect. The partnership still engaged in the manufacture and sale of its own electric welding machines throughout 1940. Petitioner exercised the same degree of control and management over the company in 1940 which he had exercised in 1938. The business continued in much the same manner. A partnership return filed for 1940 disclosed net income of $55,630.99, $27,815.50 of which was indicated as petitioner's share and a like amount to his wife. In both the partnership and individual returns the business was described by the name "Weldrite Electric Welding Machine Co." Opinion The controversy as to the taxwise validity of the partnership between petitioner and his wife has been before us in a prior proceeding (Docket No. 109298). The first disagreement between the parties is as to the conclusive nature of that earlier adjudication. We need not attempt to apply the stricter phase *116 of the principle of res judicata which, where the issue is the same, has the effect of foreclosing any examination of the record. Concededly, the issue here is different as the circumstances surrounding the conduct of the partnership business might vary fundamentally from year to year. . The record is the prior proceeding, however, unlike that in M. M. Argo, is before us. It is essentially similar to this one, except in respect of the two subordinate issues, which, as subsequent discussion will develop, do not affect the primary question. The secondary aspect of res judicata is thus applicable, , and any "right question or fact" put in issue and necessarily determined previously is now conclusively established. , affirmed (other issue) (C.C.A., 2nd Cir.), . From the record in the previous case we find that the Board of Tax Appeals expressly held not only "that petitioner made a bona fide gift to his wife," but that "subsequently, or *117 perhaps contemporaneously, he and she entered into a partnership within the meaning of the revenue act." Since the important issue of fact in these cases is the good faith of the gift, , we thus have a distinct joinder of issue and an express decision as to the decisive questions, one of fact and the other of law. And since the same gift and the same partnership are primarily involved in the basic issue here, we regard the matter as concluded by the prior decision without further examination. By a supplementary document at the inception of the present tax year petitioner purported to give his wife an additional one-sixth interest in the partnership business, thereby increasing her share to one-half. The good faith of this additional transaction is also attacked by respondent and creates a subordinate issue. At the same time, however, the provision for payment to her of a stipulated salary of $3,000 was eliminated. It is thus unnecessary to examine this supplementary transfer as though it were an entirely uncompensated gift. Excluding the income from the so-called "Expert" contract, which will be separately discussed presently, *118 the total partnership income for the year in question was in the neighborhood of $25,000. One-sixth of this would amount only to something in excess of $4,000. Having regard to the relative desirability of an assured payment, as opposed to the problematical value of a percentage of future profits, we cannot say that the substitution of the additional interest was grossly out of proportion to the benefit of the salary relinquished or that two parties dealing at arm's length could not reasonably have arrived at a comparable agreement. That being so, it does not strike us that the good faith of this phase of the transaction can be seriously brought into question. As to the first two issues, accordingly, we disapprove respondent's action. The final question relates to the inclusion in partnership income, and hence to the divisibility, of commissions received by petitioner as a result of a selling contract between petitioner and a manufacturer in a related business operating under the name of Expert Die & Tool Company. Without repeating the facts which appear in the findings, this contract in form was a purely personal one with petitioner, the services involved were to be rendered by *119 him, and the contract was performed accordingly. The commission payments were made by check payable to petitioner alone and, although they were deposited in the partnership account, and certain expenses incidental to the performance of the contract were paid out of the same account, the circumstance entirely lacks significance when it is considered that petitioner had no personal account of his own and testified that he used the partnership account for all financial transactions, personal as well as business. It seems to us to follow that any arrangement between petitioner and his wife whereby the proceeds of the Expert contract were made available to her through the partnership or othewise was no more than the assignment of petitioner's earnings. . Even where a contract has already been performed, the assignment of its proceeds is ineffectual to shift the tax consequence. . To an even greater extent is this true where the assignment involves future earnings and the assignor retains the power through control over his own services to confer or withhold its benefit. *120 ; cf. Horst v. Commissioner (C.C.A., 2nd Cir.). , and its reversal, . We think it follows that all of the income from the Expert contract was for tax purposes that of petitioner, and that neither the existence of the separate partnership business nor any "anticipatory arrangement" between petitioner and his wife, nor the subsequent assignment of the income to the partnership, if such in fact took place, was effective to shift the burden of tax on this income away from petitioner. This portion of the deficiency is sustained. Decision will be entered under Rule 50.